Case number 22-5341 Monte Silver v. Internal Revenue Service, Dell, Mr. Redding, for the evidence. Morning, Your Honors. Morning, Mr. Zell. My name is Mark Zell. I'm here for the appellants, Monte Silver and Monte Silver, Ltd. May it please the Court. Your Honors, Monte Silver and his company sued the IRS in order to compel the IRS to comply with the IRS case number 22-5341 Monte Silver v. Internal Revenue Service, Dell, Mr. Redding, for the evidence. The IRS has, as even the Sixth Circuit and the Government Accountability Office has indicated, has consistently failed to comply with the requirements of that statute. The District Court, in ruling that the Silver suit was barred by the Anti-Injunction Act, 26 U.S.C. 7421, failed to take any account of the Congressional mandate regarding the proper balance to be achieved in RFA-C. The District Court, in ruling that the Silver suit was barred by the Anti-Injunction Act, 26 U.S.C. 7421, failed to take any account of the Congressional mandate regarding  The company itself is an Israeli limited company, limited liability company. It is wholly owned by Mr. Silver, who is a United States citizen. I understand. Will the company itself ever have to pay this tax? The company itself will not have to pay the tax. Ever? Ever. Okay. But the company, this case is not about the, excuse me, Your Honor, this case is not about the payment of the tax. This case is about compliance. If the company, I'm not talking about Mr. Silver. Okay. If the company is never, not even subject to this tax, then how can it, and it's not a United States corporation, how can it raise any challenge? Apart from, I'm not talking about Mr. Silver himself individually. I'm talking about this company. Well, the company and Mr. Silver, we've maintained in the previous litigation and in this litigation, which the district court agreed with, are to be considered as a single, a single package or entity, because the, they are the object. Does the company not file its own tax returns? The company doesn't file U.S. tax returns. Okay. Mr. Silver. Mr. Silver files U.S. tax returns. And he made an election, he made an election under section 962 of the code. No, I'm not disputing that. I'm just trying to understand why the company is even before us. It's not a United States taxpayer. It's never, ever going to be subject to this tax. But that's, the essence of this case, Your Honor, is not whether Mr. Silver, who has no tax liability, or the company, who is not required to pay United States tax, has any tax liability. But the company, is the company obligated to provide this information to the IRS? I get that Mr. Silver is. Is the company? The company, the company cannot, Mr. Silver cannot apply the, he can't give the information unless the company provides it. The company also, the company therefore provides and incurs compliance costs for purposes of standing to, to, as a result of the regulations in this case. And therefore, the company is, is a proper plaintiff in this, in this action. But the real, the real core of this, this dispute, and while we're here today. What happens to the company if it doesn't provide the information? The IRS has no jurisdiction over it. Can't sanction it. Can't do anything to it. It says this is too much of a, this is too much of a burden. I don't want to do it. The company has incurred costs, okay, as a result of the action by. Well, it's done that because it's helping out Mr. Silver. And I get that they're one and the same. But just for our purposes, you've brought us here as two plaintiffs. If this company chooses to do this paperwork to support Mr. Silver's needs, that's a choice. But there's no legal obligation. Mr. Silver has a legal obligation. This is a one-member company, Your Honor. Okay, Mr. Silver and the company are, are, are identical, okay? They, they are one and the same. They aren't identical if one's a U.S. taxpayer and one is not. If one's. Okay, but. Excuse me. One's potentially subject to the tax. Potentially may not have to pay anything. Might come out at zero. But is at least subject to the tax. All right. And one is not. Okay. And one's a small business and one is not. All right. Now we're getting into the statutory standing argument. It's not a statutory standing argument. Yeah. It's a plain old standing argument. All right. Mr., in, in, in, in Your Honor's opinion, who is not the small business? Mr. Silver because he's an individual? Is that, is that where Your Honor's going? I'm asking you these questions. Well, I'm saying. Is Mr. Silver a small business? Mr. Silver is a small business in our interpretation of, of the Small Business Act, Section 3. And, and for purposes of the, of the Regulatory Flexibility Act, yes. That has not been determined. Individuals? By any, by any court thus far. Okay. What's your, what's your, tell me the statutory language that says an individual counts as a small business. No. No, it says, the statutory language says, and I don't have it right in front of me, that the, to be a small business concern, it has to be independently owned and operated and has, and not, not to have a significant role in the, in its field of operation. That's the statute, 1958 statute. That may well apply to his, does that apply to his company? Does that apply to the company? The company also meets that, that standard clearly. So, I, I, in our view, there's really no, there's no question about the standing of both parties and, and, and either one. It may not be in your eyes, but I'm asking questions because there's some in mine. And so, if Mr. Silver is not individually, because you've got two plaintiffs here, two appellants. Correct. Mr. Silver and the company. Right. Separate ones. Mr. Silver does not seem to me to qualify as a small business. I disagree. Okay. Because? That's what, that, that, this Court will be the first one in the nation to determine that issue, that whether an individual can qualify as a small business under Section 3 of the 1958 Act and the Regulatory Flexibility Act. Your job is to establish standing, and I have no briefing on that question. Well, our. And you've got a business here that would, the corporation here, let's assume that qualifies as a small business. But it's not a United States citizen. It's not subject to this tax. And so, I'm trying to figure out what to do. We're not attacking the tax. We are attacking the, the impact of the regulations on these, these plaintiffs in terms of incurring compliance costs. But there's an Israeli corporation. It's just a core Israeli corporation. No members are U.S. citizens. The corporation isn't a U.S. citizen. This is a hypothetical. Excuse me. Excuse me. Has no business in the United States. They couldn't bring up a Regulatory Flexibility Act challenge to a tax that doesn't apply to them. So, that's why I'm trying to get you to explain to me how this is working. I'm trying to explain, Your Honor. Okay. When a foreign CFC is wholly owned by a U.S. citizen, shareholder, 100 percent, and incurs and is the object of a tax along with the U.S. citizen, the citizen actually pays the tax. But he does so based on the profits and the economic and financial information accumulated at the company level. And the tax is directed, and when you read the regulations, in order for the U.S. citizen to file his tax return, his 899.2 or 5471, he needs to have that information from his wholly owned company. It's at that level that the profits and the guilty profits and all these various terms that are involved in the statute are computed, calculated. He then takes that information, which the company accumulates, pays for in part, gives it to him, and he files it on his U.S. tax returns. So the burden that you talk about, how burdensome this information-gathering process is, is a burden on this company. It's a burden on both because they both incur compliance costs. Okay. Well, you just described to me that the company gathers all this information, gives it to him, and then he files his tax return. Right. So his burden seems to be filing a tax return, which is not a relevant burden. And so the burden is collecting all the information, organizing and getting it together, and that's done by the corporation. Well, the corporation has a significant burden, and so does he. He sits he then needs to he hires his CPA or his tax preparer or, in his case, his tax attorney, who spends the time necessary to put together the information that he gets from the company, puts it on his return, and he has compliance costs as well. Well, those are the ordinary compliance costs of any taxpayer. Any taxpayer has to get it. They either do it on their own, that's their own compliance cost, or they get a tax preparer to take the information that they have and put together the tax return. But that's not what you're complaining about. The burden, as I understand it, is what the corporation is doing, which is gathering all this information about the foreign earnings and figuring out whether they're going to be subject, how much it was and whether they're going to be subject to the tax. We maintain, as the district court necessarily found, that the burden was shared by the two plaintiffs. And the fact that the company has its own compliance costs in gathering all this information and putting it together, giving it to the taxpayer, who then also, for his purposes, needs to go through that information, consult with the experts or whatever, and then put his — put that onto the tax return, which he is required to file under the law. And that is sufficient, as the district court found, to establish standing. Now, the real problem in this case, as I see it, Your Honor, and with all due respect, is the interplay between where the district court concluded regarding the Anti-Injunction Act and the RFA. This is a — this is the first time, as I said, that any court has considered this. And when you look at the literal language of the RFA itself, particularly its reference to — specifically to IRS interpretive rules, under Section 603, Section 604, later in the — and also in the legislative history, a very impressive document called a Joint Management — Manager's Statement of Legislative History Congressional Intent, which both parties cite, you can see that the — that Congress, when it passed the RFA and amended it in 1996 to include judicial review for the first time because of the noncompliance of the IRS with the previous statute, and the remedial provisions that are also set forth in Section 611, Congress specifically stated in unambiguous terms that what — what — how the Anti-Injunction Act and the RFA were to be accommodated in an RFA action. What they didn't do, which is what the government is — has taken the position below, and the Court also agreed with the government on this, is to say that basically any — any time a taxpayer seeks to enforce the requirements of the RFA against the — against the IRS — I see my time has expired. I don't want to — You can keep going. Thank you. I'm going to ask you something. Please. The statute, as we call it the GILTI statute, was passed — and the regulations took a while before they came out. They didn't come out until June 2019. Right. So I think there was a tax year, 2018, where folks were subject to this tax but did not yet have any regulatory guidance from the IRS. Right. How did your client figure out whether he owed the GILTI tax? Sounds like a bad word. G-I-L-T-I tax. G-I-L-T-I. Without these regulations. Is one capable of figuring this out without the IRS regulations? Very difficult. Very difficult, Your Honor. And that only underscores the importance — Was it less difficult with the IRS regulations or more? No. They actually made it more so. So your view is there's a world in which there's a less burdensome — I mean, some taxes are just burdensome to deal with. But if there's a less — so for 2018, not just this company or person, but it sounds like people all over the world would have had to pay this tax without any IRS guidance. The IRS guidance is not essential to the payment of this tax. I know the factoid that stands in my mind is that the regulations which were first published in 2018, the preliminary regulations and the final ones came out in 2019, as Your Honor indicated, they were not to become — the final regulations were not to be effective until October, I believe, 2018. Okay. So what is that? 19. 18. This is what it says. The final regulations came out in June 2019. That's true. So how can they be effective in 2018? I believe under 1.951A-7, it says 2018. So people have to go back and refile their 2018 taxes? Well, that's an interesting question. This is one of the points I think — Question. Your client would have done it. Does your client have to go back and file the 2018 taxes under the IRS process? Well, one of the things that he didn't have at the time he filed, he was required to file or pay the tax, if indeed he was, was the form that he had to file. Until the IRS actually passed the special regulation, which was part of the guilty regulations that were finalized in 2019, they didn't specify a form. There wasn't even a — The forms seem to predate the regulation. No. The form is 8992. And if Your Honor looks at the Federal Register provision, which published the final regulations in 2019, you'll see it's in the last two pages of the regulation. Most of the regulation has to do with all the defining of the terms and the ways of calculating the guilty tax. It's 340 pages, I think. And then the last two pages include the addition of — the revision of one regulation and the addition of a brand-new regulation, 1.6038-5, which is the first time the you're submitting the guilty tax. And that is part and parcel of the — of the guilty regulations, and that really is the focus of the appellant's attack on the — in this case, is the — the regulations that they're challenging are the reporting regulations, which is all, by the way, that the RFA really can deal with. And when — when the RFA was amended in 1996, they introduced for the first time this — this requirement that the IRS must, when it — before it publishes or publishes finally any interpretive regulation or rule like — like we're dealing with here, it must take into account the interests of small businesses. And what the IRS did in this case, as it did in every other case that it's dealt with in the past, is to basically certify under 605B that it doesn't have any obligation to because it — You have argued that we could either defer enforcement of the regulation or even just remand for them to comply with the Regulatory Flexibility Act. Right. If that were to happen — Correct. That would — I'm sorry. I'm sorry. That would not change your client's legal obligation to pay this tax or determine if he has to pay a tax. Correct. And so he would do it how? Without the regulations? Or how would he figure it out? No. He said it's really hard and complicated. How would he do it? All that needs to happen for our purposes under the RFA is for this Court to direct that the regulation in question, the reporting regulations, the information-gathering regulations, be remanded to the agency. Now, there's a separate — My question to you was different from that. I said you ask for that relief. But while that process is happening, let's just assume it's going to take a little time for the IRS to do it. Sure. The legal obligation to pay the tax remains unaffected. Correct. And so without that guidance and those forms, how will your client figure out? Will your client still feel obliged to provide the information to the IRS? The answer is unless the regulation is deferred. And by the way, when the RFA says deferral is a possible remedy, it is immediately followed by a clause that says unless the court determines that it's in the public interest, it should not defer the regulation. That's not my question to you, though. Okay. I'm asking if you get the relief you want, and I'm talking about in particular the form in your brief here that is no injunction, but is simply a remand to comply with the Regulatory Flexibility Act. Right. Then will your client, in the meantime, until they do that, will it use these regulations, it or he, whoever the client is here, to figure out what tax is owed? If the regulations remain in effect as they would under your hypothetical, the answer is yes, of course. And if your other option is actually to enjoin these regulations, the same thing happens, the tax, the legal obligation to pay the tax remains. So if these are then enjoined, how does your client figure out how to pay the tax? Your Honor, it keeps focusing on the tax liability. Look, all we know is you said one time your client wasn't subject to the tax, but your client apparently is in a position where on a recurring annual basis, he has to figure out if he owes anything under the tax. Correct. And that obligation will remain. Correct. And if he guesses wrong, he's going to be subject not just to the tax, but to interest and penalties. So I'm assuming your client will go ahead and figure out if he owes the tax, even if these regulations are deferred. Is that correct? He will. Okay. How is he going to do that without these regulations in place? That's my question to you. Is there a way to do it without these regulations in place? Assuming that the court defers the regulations, it's going to be very difficult for him to do that. But they've already published the regulations. Is it possible for him to do it? It's possible for him to take the deferred regulations and use them and the form 8992 and to figure out these payments and make his elections and pay whatever or not pay whatever he has to pay. It doesn't just affect your client. It affects everybody in the country and the world who's affected by it. And it's a very important question. Will they still be able to meet their legal obligation to pay the tax if we give you that relief? I believe they can. It will just cost them a whole lot more to comply with it than we're even claiming in this case. But I think your hypothetical presumes something that is not essential to our case. We simply in our complaint listed the remedial options that are set forth in the RFA. One is remand. It's a separate section, 6111A4-1 or 8. And the second paragraph, separate section, is deferral. It's deferral subject to the public interest language that I mentioned earlier. But they go together, your two requests for relief, 1 and 2. If you ask for a remand and then for full compliance with RP, with these provisions and then defer enforcement until there's compliance with those provisions. We did. We did. It seems that your request for relief is remand and while we're remanding, defer enforcement. Otherwise, what are we deferring for? Well, our position, Your Honor, Judge Pan, has been to say that the remedy for an RFA via – remember, all we're trying to do in this case is get a court to ascertain whether the IRS complied and had substantial evidence to support its claim that there was a – that it could certify noncompliance. I understand that. It just seems to me that if we think that this regulation is an assessment of tax and it does say that it provides rules to determine a United States shareholder's income inclusion under section 951A. So if we think this regulation is an assessment of tax and you're saying we need to defer while we remand, why doesn't that violate the injunction yet? You're restraining the assessment of the tax. What I'm saying to you today, Your Honor, is – I don't care about what you're arguing today. I care about what's in your complaint. And your complaint says defer enforcement during this remand and that deferral of enforcement seems to restrain – Is my answer on you? Okay. Please don't interrupt, counsel. I'm sorry. It seems to restrain the assessment of a tax. Yeah. And that violates the N.A. injunction. Okay. The answer – our position is that the – irrespective of whether the regulations are considered to be a tax regulation, let's assume for the sake of argument that they are. Okay. I don't – what we're saying is, and consistent with the Supreme Court's approach in CIC and in the earlier direct-to-marketing case, that what all we're doing under the RFA is asking for relief from the increased compliance costs. Okay. Yes. And that we are not asking – But in the meantime, deferral. Deferral of enforcement. No. We don't need to do that. But you asked for it in your complaint. We listed the remedial provisions in the complaint. And the Court – it's up to the Court to decide what remedy it should apply. But when the same issue came up in Silver I before Judge Mehta on motion to dismiss – and remember, we are on motion to dismiss. We're not on a summary judgment stage. On motion to dismiss, Judge Mehta clearly said, listen, this is premature. The Anti-Injunction Act doesn't work like some of the jurisdictional statutes that we're familiar with involving immunity or Federal question jurisdiction. It's a jurisdiction-stripping statute, at least as this Court has interpreted it. And what Judge Mehta said, and which we agree with, is a proper analysis, is that until you get – the Court finds that there has been a violation of the RFA, then the whole question of Anti-Injunction Act defense is premature. It just doesn't come up. In fact, if the Court decides that there is no RFA violation, that solves – that stops the question there. So if we read your complaint to be asking us to defer enforcement of the final rule, and we read the final rule to be an assessment of taxes, then this would violate the Anti-Injunction Act, correct? No. Why not? Because what this case is about, what the complaint is about, is – Oh, but that's not my question. My question is, if we read this complaint to request defer enforcement of the final rule, and we read the final rule to be an assessment of taxes, would that violate the Anti-Injunction Act? You – okay. It's a yes or no question. The answer is no. And the reason is no is because this lawsuit, the lawsuit that's set forth in the complaint at the motion-to-dismiss stage, is about the RFA. The RFA. And the Congress – this is probably the only statute that I'm aware of where the Congress, when it passed the RFA in 1980 – again, in 1996 is the relevant timeframe – actually took into account this question that Your Honor is asking. How do you accommodate the Anti-Injunction Act with the RFA requirements, which are by definition always going to be pre-enforcement challenges to the IRS rulemaking? Okay? And – and – But you said defer – defer enforcement of the final rule. The final rule, there's more to it than the RFA aspect of it. No, but we – And if we think the final rule is an assessment of taxes, this would violate the Injunction Act, correct? If you look – if you look, Your Honor, at section 605 of the – of the RFA, there's a subsection C. It says, In order to avoid duplicative action, an agency may consider a series of closely related rules as one rule for the purposes of sections 602, 603, and 604. What they did in this case is they incorporated in the GILTI regulation not only all of the panoply of definitions and formulas and examples that you read in the first 338 pages of the rule, but also these two rules that create for the first time this record-keeping, information-gathering obligation upon the businesses. That's exactly why the RFA was passed. I think I understand your position. All right. We will give you a couple minutes on rebuttal. Thank you. Thank you, Your Honor. Let me just get my papers out of here. Good morning, Your Honors. Douglas Runney for the defendants. Your Honors, there are two issues in this case. The first is whether the plaintiffs' suit to defer the enforcement of the Treasury regulations against themselves and other small businesses is barred by the Anti-Injunction Act's prohibition on suits to restrain assessment or collection of Federal taxes. The second is whether the plaintiffs lack Article III standing because they cannot show that Treasury's failure to conduct a full Regulatory Flexibility Act analysis affected the content of those regulations or that any change to the regulations from such an analysis would affect their future compliance costs. So on the first question, how is this case not controlled by the Supreme Court's decision in CIC? This is an information-gathering provision that allows an assessment to be made. It's a pre-assessment information-gathering provision, just like in CIC. And the Supreme Court said pre-assessment information-gathering, challenges to that type of informational requirement from the IRS, is not barred by the Anti-Injunction Act. That's this case. It's not all fours with CIC. We would submit that that's not the case here. It is not just an information-gathering requirement because it also, in addition to the specific regulation that Mr. Zell is referring to, there are numerous other regulations that discuss the calculation of guilty and several anti-abuse regulations which indicate certain situations, address certain situations where the tax might be calculated differently. Anti-abuse situations is what CIC was all about. We need to get information from you to see if there was – there were problems going on with particular types of tax transactions there. That's what CIC was all about. Right. The fact that you gather information and then use that information to compute your taxes, if any, does not change the fact that this is pre-assessment information-gathering. We all engage once a year in pre-assessment information-gathering, and some of us have to provide that information to the IRS, but that is separate from the assessment. You're asking them to give information. How is them providing information the IRS's assessment of a tax? That information is reported ultimately on Form 1040 in terms of this is their income, this is their taxable income, and the tax due. Sure. It is a form of self-assessment. I have to gather my forms with what income I got this year before I can fill out my taxes. I've got to figure out what my gross income was. That process of getting papers together is called information-gathering, not the assessment. Someone then takes that information, either the taxpayer or they provide it to you all, and you all do the computations. But the fact that you use the information to figure out what, if any, taxes do, is no different from CIC. That was the whole point of the information-gathering process in that case, was to provide information. And same for the digital services case. To provide information to figure out if a tax is due or not. But the regulations about information-gathering, the Supreme Court could not have been clearer our pre-assessment and so are not covered by the Anti-Injunction Act. I'm going to get overruled if we rule for you. I don't understand how the CIC doesn't control this case. We don't think that's the case, Your Honor. There are several important differences here. This is reporting it on, ultimately on Form 1040, the tax owed as a form of self-assessment. Ultimately, after they get the information, they use that information to figure out what numbers to plug into their form. Is that your point? That, yes, that is a self-assessment. In CIC, they had to go through all this information to figure out if something wrong was going on or something wrong was going on. They needed to report that to the IRS and pay tax on it. That's the exact same thing. That's no difference at all. It's different because there was another difference in addition to the fact that it's a form of self-assessment, and as Judge Kavanaugh said in the Seven-Sky case, before in this Court, in his dissent, is that the CIC, it was not a regulation. It was a notice issued concerning microcaptive transactions. Microcaptive transactions were not taxable under the notice. Why does it matter whether it's a regulation or a notice? Because the notice was backed up by a statutory penalty that the IRS can apply as discretion. You've got statutory penalties. Look, there's no question that the obligation to pay the tax if anything is owed exists. It exists independent of your regulations. Congress did not make the applicability of this tax contingent on your regulations. And, in fact, as best I can tell, there was an entire tax year when this tax had to be computed and determined to be owed or not, and if owed, paid, before there were any IRS regulations. So it's pretty clear these regulations are not a necessary predicate to payment of the legally required tax. They, instead, are a way that the IRS wants to get information that it can use to make an assessment. But the information is not the tax, correct? That's correct, but the process of reporting that information is reporting the tax due is self-assessment. We would submit that's materially different. You have to report whatever information is needed to calculate their tax, with or without your regulations. Yes. They had to do that for the 2018 tax year, correct? Yes. So these regulations are distinct from that. The fact that you ultimately take that, you don't do their problem is with the information gathering and all the paperwork, not with the 1040 form, right? It is with all that process. That's what they say you guys did right or wrong. I'm not mentioning the merits here of the Regulatory Flexibility Act claim. We're at a jurisdictional stage. But assuming they're right, which we do at this stage, assuming the government didn't comply with the Regulatory Flexibility Act, it's made procedures, which they say made it harder, not easier, to comply with this tax. And those procedures, which are all about information gathering, are exactly the type of thing that we've been told twice by the Supreme Court is not covered by the Anti-Injunction Act. So, I'm sorry, my understanding of the reporting requirements in CIC were that they were reporting requirements that didn't actually impact the tax liabilities. They were separate reporting requirements. That's correct. Whereas in this case, there are reporting requirements, but there are also rules to determine a United States shareholder's income inclusion, which affects your self-assessment. That's correct. So in that respect, if it's a self-assessment, then it is subject to potentially the Anti-Injunction Act. That's our position. All taxpayers initially do a self-assessment, and I think there's a case, Hibb, that says that that's part of the assessment process. And it seems that these regulations might be distinguishable from those in CIC because there are some reporting aspects of this, but the reporting aspect in CIC was not one that impacted the tax liability, the assessment, whereas these regulations, part of it's reporting, part of it does affect your assessment because it tells you what's included in your income. That's correct, Your Honor. No, no, no, no. So, Renee, can I ask you, I'm going to go back to the statute, the Anti-Injunction Act, and see if I understand your position on behalf of the Internal Revenue Service. The statute doesn't focus on the court's action. It doesn't focus on what the court would agree to in terms of a remedy or any of that because it talks about, and I, you know, this is a question. Is it your point that when the statute says no suit for the purpose of restraining an assessment or collection is allowed, it's the suit that's not allowed and the purpose of the suit? Is that your position? That's correct, Your Honor. Right. So all the, you know, so in other words, you couldn't escape the Anti-Injunction Act on the basis, for example, of saying, well, the plaintiffs here sought an injunction, a set-aside of the regulation, which would have interfered with the collection of taxes. But the court doesn't have to grant that, so, therefore, will allow the suit to go forward even though the — they were maintaining the suit for the purpose of doing something the Injunction Act prevented. That's a long question, but I think you get it. Yes. Is that the gist of what we're talking about here? That is our position, Your Honor. We think it's a jurisdictional issue that is properly presented on a 12.1 motion. And the focus is on what the suit, the purpose of the suit, and the only way you can find that out is to take a look at what the allegations are. Exactly, Your Honor, and that's what the Supreme Court said in CIC Services. Well, I think it said look at the prayer for relief. And so if one option is not barred by the tax injunction — the Anti-Injunction Act, and another form is, what happens? Well, they've asserted them both. No, no. I'm just asking a hypothetical. If someone said here just remand, don't defer the regulations. So if the complaint said remand or defer. It goes back to what the purpose of the suit is. And so here's my — what is the answer to that question? I don't know if I can answer that in isolation. Well, there's an answer there our Court gave a long time ago in a case called Sanchez v. Espinoza, an opinion by Justice Scalia. If there's a suit and one count says we want an injunction and the other says a declaratory judgment, which I take it is the question, the Sanchez opinion by Justice Scalia says they am — when it's against a government officer, that amounts to the same thing. Because we assume that government officers are going to comply with the law. So if you just give a declaratory judgment, it's the equivalent of an injunction. We would agree with that, Your Honor. Yes, but if you simply ask for remand for compliance with the Regulatory Flexibility Act. And so that does not affect the collection process, doesn't affect this regulation, has no effect on the regulation, has no effect on the collection of information, has no effect on the obligation to file the tax or the tax that is due. I mean, the Declaratory Judgment Act itself has an anti-tax provision, so that's different. But if all they ask for — imagine there's a complaint with a single request. The only request is, is remand for compliance with the Regulatory Flexibility Act. Do not defer the regulations.  I think they'd have a much stronger argument, Your Honor. Would that, in the government's view, be barred by the Anti-Injunction Act? It's difficult to say because the statutory remedy also says that the court — There'd be no injunction, there'd be no declaratory judgment affecting the assessment or collection of taxes. The statutory remedy says that the court shall order deferring the enforcement of the rule in this case, in addition to remanding the rule to the agency. And this Court's case law tells us to — You read the Regulatory Flexibility Act as forbidding a remand without injunction. It doesn't. It allows it, if it's in the public interest, to have continued enforcement. Right. And the public interest would certainly be informed by the public interest in revenue collection. Yes. So if you have a single count for relief — and that's what the Supreme Court has said to focus on in these Anti-Injunction Act cases. Let's look at the claim for relief. If you had a single count claim for relief that said just remand, not barred by the Anti-Injunction Act. I think if you were specifically pled that continued enforcement of the rule is in the public interest and disclaimed any — Why do they have to plead that? I'm just telling you to look at the — look at the request for relief. Because the statute provides that that is the relief, the presumption is deferring enforcement of the rule or regulation. But? But — Someone pleads just remand this. I just want Compliance Regulatory Flexibility Act. I don't want to mess anything up. Right. But I think they would still have to plead facts establishing that it's in the public interest. Assume that they pled that. Then what? Then I think that that would probably be a way to get around the Anti-Injunction Act. Okay. And then in CIC, people were subject to penalties, right? The material advisor petitioner there was. Right. And those penalties are considered taxes in that case, correct? Right. So the information affected the ability of the IRS to figure out whether those taxes were due, correct? Not necessarily. The information would allow them to assess whether the transactions were abusive because microcapital — Exactly. That information — the reason you wanted the information was to figure out — I mean, any time you figure out, you figure out whether the tax was owed or not. You do that all the time, right? Yes. And so the point of the information in that case was to provide information to the IRS so that it could figure out whether a tax was owed or not, correct? At some point, yes. Yeah, at some point. That's what it was all about. They were trying to figure out that there were these sham transactions. They needed information. They said, provide this information. And we will use this information then to determine if a tax is owed or not. Ultimately, yes. Okay. And the Supreme Court said the Anti-Injunction Act didn't apply. Excuse me, Your Honor? The Supreme Court said no Anti-Injunction Act problem there. Correct? It's several steps away, Your Honor. Correct? The Supreme Court said no Anti-Injunction Act there. In that case, but we think there are several distinctive facts about that. What we have here is reporting for self-assessment. There you had an upstream penalty that would only apply in a discretionary situation. Is it reporting only for self-assessment or does the information get turned in as part of their forms to the IRS? In this case or in that case? Sorry, in this case. Is it used only for self-assessment or is it turned in? I mean, it's reflected in the forms that are filed with the IRS, correct? Yes. Okay. So it's not just self-assessment. This is information provided to the IRS. So the IRS can do what with that information? It's to determine the proper tax liability. Determine tax liability, which is called an assessment, correct? It's a self-assessment and then the IRS can audit that through a process of double checking. So it provides information to the IRS so they can determine what the taxes do. Eventually, yes. I see I'm over time, Your Honors. Does the Court have any further questions? All right. Thank you very much. Thank you. Mr. Zell, we'll give you two minutes. Two minutes. Thank you. Your Honor, the government counsel made an extraordinary statement here in response to Judge Pan's question. He said self-assessment is equivalent to assessment for purposes of the Anti-Injunction Act. That is not what the Anti-Injunction Act is about. And the Court said, as the Court said in direct marketing, which is under the TIA, the two statutes are interpreted together. Those terms, restrain and these terms assessment and collection, have very narrow meanings for purposes of the Anti-Injunction Act. Just think what the government has told you here. They say that any time that you submit a tax return in which you're self-assessing your tax liability, the Anti-Injunction Act will apply across the board. Well, if there's a regulation that determines what my self-assessment is, for example, say the IRS said I can't deduct my mortgage anymore and I wanted to challenge that. That would affect my self-assessment because I first have to put that in my taxes to calculate what I owe. But what I have to do is pay the taxes and then challenge. That's what the Anti-Injunction Act would say in that case. Exactly. They're saying your self-assessment is the assessment of the taxes. Oh. But they're saying that's right. Every case. Well, Your Honor is correct. In every case where you're self-assessing your tax liability, the Anti-Injunction Act would apply. Well, if I want to challenge a regulation, I would have to follow the Anti-Injunction Act, pay the taxes, and then challenge. Well, that's the ---- That's how it would apply in every case. That's how it works. That's what the Anti-Injunction Act works. We're in agreement. But that's not what the RFA was supposed to work. The RFA, I urge Your Honor's, I don't have, I have 12 seconds. I urge Your Honor's to read the legislative history at 142 Congressional Record. Before we get to that, let me just ask one quick last question. Sure. And that is five years have elapsed now since this tax has been in effect and all we're told is that he didn't owe any tax for 2018. Has Mr. Silver owed a tax, owed this tax in any of the subsequent years? I don't know the answer to that. Well, if he did, he sure would have a way to challenge this, wouldn't he? Well, I ---- Well, you've argued the South Carolina exception. Under the interpretation I've just heard here, he would not. He would have to pay the tax. He'd have to go ---- To challenge it, yes. Yes, but not just pay the tax. The South Carolina exception, which says there's no way we're going to be able to, but if in fact you can't tell me that he hasn't paid this tax in subsequent years, then how are you eligible for that exception? Well, all I have to do is cite the government's brief on this one. They tell you exactly how we have to go about answering Judge Pan's question about how we would comply with the Anti-Injunction Act to raise this question under the RFA. We'd have to go and not make a 962 election. No, that's not my question. That's what happened in that year. You can't tell me, it sounds like you can't tell me that in subsequent years, he just didn't owe this tax. If he did owe it in a subsequent year, he could have raised this challenge then. And you can't tell me that it was anything about, if he did owe it, then you had a perfect vehicle right there for challenging this. I'd have to, if he owed the tax, I would have to then ---- He owed it in 2020. He could have. Okay, in a situation like ---- If he paid the tax, then he can file a refund suit. Well, assuming the Anti-Injunction Act applied in that instance, okay, we would say it does not. But if he's paid the tax, if he's paid the tax, why doesn't it apply? Well, that's a question where the South Carolina, and in a situation like that, the South Carolina v. Reagan exception to the Anti-Injunction Act would be problematic. Okay. But the ---- it's this argument that the self-assessment is assessment for within the meaning of the Anti-Injunction Act is completely off the mark. Okay. Okay. And would allow ---- I think we've heard your argument on that point. All right. Would that ---- Any other questions? I'd ask the Court to reverse the district court on the issue of AIA and affirm on standing. Thank you. The case is submitted. Thank you.
judges: Millett, Pan, Randolph